May it please the court, I'm Eric Weaver on behalf of Mr. Schweder. I'm planning to reserve two minutes of my time. I think there's two bases for remanding this case. The easy one is the ineffective assistance of counsel claim. I think it's one of those rare cases where the record shows that he took the plea on the basis of his client, his attorney's repeated representation that he could attack his incarceration. As I read this record, it looks to me like he took the plea because he knew he was going to get ten years on the felon in possession charge, right? Yes, yes. And he could get up to ten years on the drug charge or maybe more. He got three additional years and the government kept saying we're not willing to wait for McIntosh to come down and the judge was, I've rarely read a plea colloquy as detailed as this where the judge says, look, the government thinks you can't attack it later. Your lawyer thinks you might be able to. I have no idea. Having all that in mind, do you still want to take the plea? And your client says yes. So what's, you know, I mean, and the truth is no one knew whether you could collaterally attack these things at the time. No one knew how McIntosh was going to come out. So the lawyer may have guessed wrong, but remember, we're on direct appeal, so ineffective assistance has to appear directly from the record. Well, the reason I think this is one of the unique cases that shows ineffective assistance on the record is the Davies case. That was from the same district and counsel has a duty to do research. If he'd done the research, he would have learned that the same basis for rejecting a direct appeal on the merits existed in Davies, that he wasn't. Well, there was a whole series of cases in the eastern district that rejected the very argument that we accepted in McIntosh, right? That's true. So, I mean, if he'd read the cases, the lawyer would have said, this is a long shot and you're getting a pretty good deal and the government's not willing to keep it alive. Let's let's take it now and not worry about it. I still think that a fair reading of the record shows he was very interested in the McIntosh case. He didn't know the name of it at the time. He was very insistent that the government didn't have the authority to prosecute him and that he was relying on the representation of his counsel that he would be able to challenge the his incarceration. Also was very specific in the plea colloquy. He said we'd like we might possibly have the possibility of seeking injunctive relief later. He didn't say, I can, right? That's the words he said. There's a possibility of seeking injunctive relief later. And Mr. Schrader kept going back to that. And the judge kept saying, I'm not so sure. But let me ask you a different question. Okay. Sure. Because, in effect, you still retain the ability to file a 2255, I take it, for ineffective assistance of counsel. Yes, that's true. You might face a collateral attack waiver, but that's not in front of us. That's true. Assume that ineffective assistance doesn't appear clear from the record. You said you had two arguments. What's your other one? Well, the second argument is whether the government had the right to prosecute him in the first place, the McIntosh argument. And I think that the key case on that is the Garcia Valenzuela case. It's that case presents the inverse of what's the situation in this case. There, the prosecutor, the U.S. attorney, sought to dismiss all but the least serious count. The defendant insisted on pleading to the serious counts, allegedly because he was afraid of his co-defendant. The court never accepted the motion to dismiss or never ruled on it, and actually accepted his guilty plea waiver on the serious charges. This Court, even though he insisted, it wasn't a question where there was some ambiguity about whether he was voluntarily pleading or not. He insisted in pleading on those cases. But this Court concluded that it was in violation of the separation of powers for the Court not to accept the motion to dismiss by the prosecutor.  Pardon me, I didn't mean to interrupt. Here we have the opposite. We have the government first defying Congress and proceeding with the prosecution, and then subsequently defying McIntosh by proceeding with the appeal. I mean, the government doesn't have any authority to spend any money on this case, yet it continues to do that. So I think it's a very important separation of powers question. Here you have Congress and this Court arrayed against the prosecution of this case, but the government persisting in prosecuting it, even though it doesn't lack the – it doesn't have the authority to do so. It seems to me it's a unique proposition. I can't imagine a situation where you can uphold a conviction based on a charge that the government doesn't have any authority to prosecute. Let me assume you're right for a second. The government has no authority to do what it's doing anymore. By what vehicle can you raise that claim? You waived your appeal. That's what you're here now on. Right. You waived – you waived your – I assume you also waived your collateral attack abilities. So whether or not the government is acting badly – we can deal with them within a minute. I'm sorry, Your Honor, I didn't hear. Whether or not the government is acting badly, and we can ask them about that, through what vehicle do you have the ability to raise that claim? Maybe counsel was right. The only ability you have is to go file an injunction against the government from continuing to incarcerate or prosecute your client. Well, it turns out that's not the case. This Court's affirmed Davies. And so – Davies was a collateral attack, was it not? Yes. So why don't you have the ability – Well, because – because – No, no, no, let me just stop. Why don't you have the ability to go file for a preliminary injunction that says, stop spending money on punishing my client? I suppose he does, but the courts – the cases say – I mean, there is an exception to the waiver of appeal – For absence of jurisdiction. Right, when the government doesn't have the authority to prosecute you. It seems to me that this is actually a stronger case for upholding the separation of powers than a double jeopardy case, for example. Because here you're saying – here you're having the prosecution decide on its own against the authority of Congress and this Court that it can prosecute these cases. That seems to be – in terms of the exceptions, the MENA and Black Ridge exception – Black Ledge exceptions, this seems to be a much stronger one than many of the ones that have been – for example, vindictive prosecution. This Court has said that vindictive prosecution is not barred by an appeal waiver. This is a more serious situation than a vindictive prosecution. Before you run out of time, explain to me – let's say we were to agree with you and say – what would be the relief you would be seeking? I think it's the McIntosh relief. He gets to remand. He gets to make an evidentiary hearing in front of the court to prove that he was a medical marijuana producer. And don't the cases that deal with the Black Ledge exception, if you will, say that the jurisdictional defect must be apparent on the face of the indictment? Here it's not apparent unless we have a hearing, right? It's true, I concede, that there are no cases that hold this proposition. But it seems to me this is a very troubling situation that they can – that the government can – that the court can uphold a prosecution when the government doesn't have any authority to bring it in the first place. I don't think you finished answering my question. Pardon me? You didn't finish answering my question. I'm sorry if I did. Oh, I'm sorry I did. I thought – in McIntosh, the remedy is to remand. He makes an evidentiary hearing and then he gets to enjoin the prosecution of that case. So what happens at that point? So then the penalty for the three years for the drugs would be gone. But you're asking – Sorry. Go ahead, Judge. I'm sorry. We're both asking the same question. I'm not sure. I think we're asking different questions. So the question is, this is a plea agreement, right? That's right. Can we – I mean, let's say you are entitled to a relief and do part of a plea agreement. Wouldn't the remedy be that the dealer set aside? Well, we would also take that. Well, no, that's a different remedy. This is why I'm asking you what it is. Well, again, we're in uncharted waters here. And why do you have to make an evidentiary showing at all? If you are entitled – if you are entitled – if you were entitled to this before the plea agreement was entered, why isn't the remedy to set aside the plea agreement now, send it back to the district court on a clean record? I think that – That would be good, too. That would be good, also. And I think it's a logical extension of McIntosh. This is why I ask you this question, that you immediately jumped – No, I think you're right. I mean, why isn't the correct answer is, look, you're entitled to make the showing. The district court didn't give you a chance to make the showing. The plea agreement without the showing is no good. It gets undone. You're back at square one. Would that be on all – I assume that would be on all counts, right? The reason that I initially said that the reason to dismiss the – or to enjoin the prosecution of the marijuana case is because United States v. Kleinman, which is this case, court's case, says that it's a count-specific remedy that McIntosh is. I derived from that – Was Kleinman a plea bargain case or a – It was a case where there were multiple charges. Was that a case involving a plea or a – No, it was not. Okay. But here we have a plea. Right. A plea ties up all the counts together in one. Right. And I'm not sure how we can sort of set aside part of a plea. Isn't the ultimate remedy that if you prevail that you – we just simply set aside the plea? I think you're right. And then he has an opportunity to make the showing. And the government has an opportunity to – Well, to hold you apart, let's assume that you win on your showing. But the government's no longer bound then to its 10-year felon in possession. That's correct. That's correct. Isn't that 10 years of felon in possession maximum? I believe so, yes. So what's he got to lose then? I mean, he didn't get much of a deal on that one, right? No, he didn't. But the – he has a lot to lose, actually, because they were planning on filing a superseding indictment to make him a career criminal. So it's not – he does have a risk here. It's not like it's a free pass from this court if he gets sent back. Well, that's why I'm interested in Judge Kaczynski's question. Do you really want that? What you really want to do is get out of the marijuana sentence, right? Well, it's not – You really don't want to go back to square one because your client could be in a world of hurt if you do. Your Honor, first of all, it's not my case. Second is the court knows. I'm sorry. I've been doing this a really long time. I'm sorry. In what sense is it not your case? I'm sorry? In what – It's my case in terms that I'm the advocate. The decisions about whether it's a good idea to withdraw the plea or not are the client's decision. But I assume you have not discussed these possibilities with your client because you seem to be nonplussed by the very line of inquiry. Well, Your Honor, we're starting to get into – Have you – I mean, if the answer is you don't know because you haven't talked to your client and that's your client's decision, that's an answer. Well, Your Honor, we can get into – we're starting to get into attorney-client privilege here. But I can assure the court that I – I'm not asking you what you discussed with your client. What I really am asking – I mean, really, the question I have is, is there some remedy short of setting aside the whole plea of untying the whole knot? I mean, you seem to be asking for sort of a partial undoing of the plea on the marijuana counts, not on the gun count. I just don't know – I mean, assuming that you win on every claim you're making, right? I'm not saying you are, but I'm saying if you get there, I don't know how you can ultimately get anything other than a setting aside of everything. Obviously – I'm back at square one and, you know, telling me you haven't – it's not your decision to make. No, that's not what I'm saying. What I'm saying is I have fully advised the client about all the possibilities of this case and the client's decided that he has instructed me to make these arguments. Including the risk that it could get – that the plea could be set aside and then something else could come along that's bigger. Your Honor, I feel uncomfortable because this is attorney-client privilege, but I have advised him about all the possibilities here. Let me ask the question in a way that doesn't implicate attorney-client privilege. The remedy you seek is remand to the district court to hold a McIntosh hearing? Yes. If you lose that hearing, if it's found that your client wasn't in compliance with California law – Then his conviction's affirmed. Then we don't have anything else to do, right? That's right. If you win that hearing – He proceeds in the district court with what comes up in the district court. Well, shouldn't we tell the district court what to do if he wins that hearing? Yeah, the district court should hold a hearing. If he proves that he has – that he's convicted of – that he was a medical marijuana producer, then I guess he should – I think the court's right. He should be entitled to withdraw his plea because they didn't have the – Well, see, that's where I'm not sure you've got the sequence right. Why isn't the sequence – he should have been entitled to a hearing before he entered his plea because he didn't get the hearing. The plea gets set aside. Okay. And then you can do whatever happens, including have a hearing. That's correct. As a – no, that's very different from what you said, which is send it back to have a hearing, and the hearing will then determine whether you set aside the guilty plea. Very different scenarios. One of them, it goes back, you hold the hearing with the guilty plea still in place, and if the hearing turns out in your favor, then you set it aside. Under the different scenario is we send it back and say, undo the guilty plea now, and as far as the hearing is concerned or not, or whatever happens next, you now get a chance to make a showing. You know, both sides get to do what they would have gotten to do had they just waited for Macintosh to come along. I agree, Your Honor. And I think that obviously for our – With what? There are two scenarios. You can't – I was about to elaborate. Okay. I think there are two scenarios. One scenario is this Court can order the plea withdrawn and allow him to make his showing under Macintosh. Or whatever. Or whatever. Or whatever. Yeah. That's an acceptable result for us. My original reading of suggesting that all he can do is attack the marijuana charge was based on my understanding of Macintosh and Kleinman. This panel is suggesting that there is a broader remedy, and we're happy with the broader remedy. I'm trying to remember that aspect of Macintosh. Were there other counts in Macintosh? Pardon me? Was Macintosh after a plea? No. No. No, it wasn't. Okay. So that aspect of – That's right. Okay. Those were all cases where people attacked the indictment before plea or trial through an injunction. It came up, and our court said they have standing to raise this injunctive. That's right. That's correct. That's correct. That's right. I blanked on it. Yeah. That's right. So Macintosh doesn't help us here at all, one way or the other. On the remedy. On the remedy. Because if we're going to send the case, as you ask, back to the district court, presumably we're going to say, hold the Macintosh hearing, and then, if, you must do something else. And so the question that we both have is, what else? Or we send it back and say, set aside the plea and have whatever hearing is appropriate. That's another possibility, if you will. That's right. Either one of those options, I think, is authorized by the law. Either one of those options is an option that Mr. Schweider is interested in. One last question. Sure. I looked, but I couldn't find any collateral attack, if you will, any Macintosh cases after a guilty plea, other than Davies, which was a collateral attack. Right. Are there any that you're aware of? Not that I'm aware of. I've read all the Macintosh cases and all the cases that cite the Macintosh cases. I trust your research. I just wanted to make sure yours wasn't better than mine. Oh, no. It's fine. I had a chance to do it on, yesterday afternoon, one last time. I'm sure you didn't, so. Okay. And you have no preference that you wish to advise yourself between those two remedies on behalf of your client? On behalf of my client, I would like a remand and then a hearing, and then he can withdraw his plea.  Thank you. Thank you. Good morning, and may it please the Court. Greg Broderick for the United States. How can you do that? Because, well, for two reasons. First, we've got to have the ability. Did you pay your own way here? No. Did you take a leave from the government? So you're on the clock. You're spending government money while standing there. That's correct, Your Honor. Why aren't you violating the rider? For two reasons. First, we've got to have the ability to defend these things when the defendant has done nothing more than just assert that he was in strict compliance with state law. Not true. Not true. I mean, if, in fact, you are prohibited from doing this by the rider, you are not, in fact, required to appear. But we can't know the answer to that question until the defendant— You can do all the research you want, but if it turns out, in fact, as McIntosh says, you are not allowed to prosecute the cases involving medical marijuana, then, you know, you're not entitled to spend the government's money being here. Well, let me put it somewhat differently to you. If we conclude that, in fact, this is covered by McIntosh, why shouldn't we strike you brief on your appearance and simply grant relief to the appellant because it's unopposed by the government? Well, I think you'd still have to—so accepting the premise— So you're here now. You can argue all you want, but let's say when we're done, we go back to the conference room and we say, you know, this is McIntosh, and therefore the government was not, in fact, authorized to be here. Wouldn't the appropriate thing be for us to simply strike the brief, strike your appearance, and grant relief as unopposed? No, although I think if you decide that— No, why? Because—well, once you've decided that this is covered by McIntosh, I think he gets the relief that he asked for, so I don't know why you need to strike the brief or do anything else at that point, but I don't think you need to— Well, but we wouldn't have to do the work of figuring out whether we have jurisdiction or whether the appeals waiver, this does or does not violate appeals waiver. We just simply say, look, the government shouldn't have been here. But you can't do that. So there is no opposition. Because the government is not entitled to be there, we strike it, we have a brief seeking relief, and we grant it as unopposed. So a couple of things there. First, McIntosh is not—the appropriations restriction is not jurisdictional. It doesn't go to the power of the court. If anything, it goes to— I know. We have plenty of power. We're worried about yours. Oh, yeah. We've got power. We've got power. But let me ask the question differently. So we don't know yet whether there's a violation of McIntosh, right? That's right. So what's wrong with us, just as a first step, saying, District Court, take this case and have a hearing and find out if this guy's in compliance? Because he waived the waiver. No. Just stop for a second. I understand that he waived. And you have a good argument about waiver. But my problem is, you may be, the government may be in violation of this law by prosecuting the appeal, by defending the appeal, and by continuing to imprison, spending money to imprison him. Maybe you can find volunteer jailers, I don't know. And we don't know that. We don't. If he wasn't in compliance with state law, none of us have any problem. We're all done. So what's the harm in sending this back to the District Court, at least in the first instance? Let me finish. And say, tell us what the answer to this question is. We don't know what we'll do once you tell us the answer to the question. But at least tell us the answer to the question. The harm is that it deprives us of what we bargained for in this plea agreement. And we made a deal. This is about all we get out of this. It's a pretty hard deal. I mean, you know that Congress has prohibited you from prosecuting these cases. And all the defendant is asking is, look, the Ninth Circuit is considering this issue. Give, continue the case in order to find out whether, in fact, this is something government ought to be doing. Government says, no, you try that, we are going to hit you with more charges. Is that the kind of conduct that we expect our government to engage in? Well, I don't think that's the way it happened, Judge. And it sounds like blackmail to me. No. It sounds like, you know, this may be illegal conduct on the part of the government, but we're not going to let you challenge it, because if you try to challenge it, if you put yourself in a position to challenge it, we are going to make you suffer. No, that's not the way this happened at all. Well, that's not the way I read the records. No. Well, so I think you have to understand the larger context of this case, which might not be apparent on a cold reading of the record. But this was litigated for five-plus years. Mr. Schroeder had every opportunity to raise this issue below, to litigate it below, which he didn't do. We had a five-day event. I'm sorry. What do you mean by that? He could have filed a motion in the district court before the cutoff for filing motions. He could have filed a motion in the district court before raising this issue. In fact, putting aside effective assistance, his counsel said, we choose not to file such a motion. Well, the district court set a cutoff for motions. No, I'm not asking that. That's just the way I'm asking. I'm sorry, Mr. Schroeder. Didn't his counsel say at the plea colloquy, yes, Your Honor, we've chosen not to file such a motion. We reserve our right. There may be a possibility of injunctive relief later, but we've decided not to file what I would now call a McIntosh motion, but we didn't know what it was then. I remember him saying he might possibly — the record definitely supports he might possibly — No, the record also definitely supports the judge saying, let's make it clear, you've decided not to file a motion attacking the indictment on that basis. The judge asks that question, and his answer is, that's right, we want to reserve the possibility of filing for injunctive relief later. Right, and this case had been litigated, heavily litigated. We had a five-day evidentiary hearing on whether marijuana could continue to be a Schedule 1 controlled substance. She wrote a 38-page opinion laying out why it met the standard, and she had every opportunity, just like the defendants in McIntosh, Kleinman, Silketzabaw, all these other cases that have come up and gone back down. I ask the question because Judge Kaczynski's question troubles me, and if your client, if your opponent had wanted to file such a motion in the district court where the government had said, no, you may not, then I would be very troubled by this case, but I think this case, I read the record, the judge is really careful, saying to him, you could file this kind of motion, and if you want to file this kind of motion, I'll wait for you. Maybe the government will take away its plea deal, I don't know. But he said, no, no, I don't want to file that kind of motion. That's right, and that's the, he put, he, Well, I saw the government said, we will withdraw a plea deal if you don't, if you don't sign now, today. With McIntosh pending, waiting to hear what the Ninth Circuit says on the question of whether you ought to be prosecuting the case, you're saying, well, I'm going to wait for it, we're not going to wait for it, and if you want to wait for it, we're just going to up the ante, you know, it's now or never. That's what I find troubling. This plea went in in December, this case was set for trial in February, and what we were saying is, and we had told them many times that we were going to supersede if the case went to trial, so this is, this was not a penalty situation, this wasn't some kind of vindictiveness, which is, which is, I don't know, it looked vindictive to me. I mean, he's saying, look, I'd like to continue it, I'd like to continue it to find out when the Ninth Circuit says this, but whether or not you ought to be prosecuting these cases. There's a case pending, it's been argued, and the outcome might be, as it turned out it was, is that you really cannot be arguing them. The government says, no, you do this, the plea is withdrawn. He had a, he had a year from the time the appropriations restriction was adopted. I understand, I understand, so what? So he didn't, so he made the decision. At this point, you have, I'm sorry? He made the decision not to do it. But the Congress has already passed a law saying you ought not to be spending money prosecuting these cases. You keep doing it anyway, and we're going to wait for a definitive ruling from, from the Court of Appeals on this issue. I understand that, but you won't, you won't extend the offer for him to, to, to take advantage of this ruling? We did. It was extended time and again. He signed this agreement a month before the plea, and we waited. But you did not, you did not extend it for McIntosh to come out? At some point, these things have to end. It was six months, it was a month from the time he signed. I'm sorry, what's your answer to my question? We were not willing to wait, that's right. We were looking for finality, which is about the only thing the government gets out of these cases, is that we are done with them. It looked to me like what you're doing is trying to pull in a conviction before you were told that you can no longer prosecute these cases. No, and even if, even if, well, McIntosh did came out as it did, even if, even if we had waited and that would have come out, he would still have to have made the showing in the district court that, that he was in strict compliance with State law. Now, when you're looking at that, you're looking at, you've got to, this court has to decide a case his way. He's then got to be able to, to marshal the evidence to show that he was in strict compliance. If there was any noncompliance, which we had some evidence of and it's in the record, he's going to go to jail probably for the rest of his life. And against that, he's got a, a deal for, for a range of 12 to 15 years, which is below the guideline range. Even the top of that's below the guideline range for everything he put to. So he did what everybody does is he made a decision based on litigation risk. And we did this, frankly, we do the same thing. We do this all the time where you make a deal based on a developing area of the law. It's not every time the Congress says you will not prosecute these cases and that you will not spend money prosecuting these cases. No, it's not. I mean, usually it is sort of like, can you prove it? Can you not prove it? Can you, you know, sure. But you have double jeopardy problems. You have commerce cost problems. You have all kinds of constitutional issues that will arise all the time. And people make decisions based on they take a calculated risk or they decide not to take that risk and to take what is a pretty good deal in comparison to what they would get otherwise when there's a developing area of the law out there. So that this is this is, again, about the only thing the United States gets out of these cases. And defendants make this claim in virtually every case that, oh, I was medical, I was in compliance. I think only one court has ever found a person was actually in compliance. Can I ask you a question about the far end of this? Seems to me under McIntosh, it's probably. Illegal, unauthorized for the government to continue to spend money to imprison this defendant on the marijuana charges, whether or not you prosecuted him correctly, because it's the federal government spending money that Congress said you shouldn't spend. When I've had some difficulty figuring out, is he currently being imprisoned on the marijuana charges or on the felon in possession charge? Both. He's currently in prison on both. So if injunctive relief were obtained, what would it say? I, frankly, I don't know the answer to that question, Judge Hurwitz, and I'm I'm it's difficult to wrap your head around what that would be. I'm trying to think in my mind. I have this scenario where in 10 years, Congress either has continued or taken away. Should we issue an injunction that says once his 10 year sentence is up, if if the writer is still there, you can't spend any more money on it? Well, if it's got some right to bring some other case, it's probably this is not a great answer, but it's probably better to leave that what the remedy is in that case to that case. I mean, that's what this court did said in McIntosh. We don't even know what the remedy is if the government spending. But our follow on cases for McIntosh did say the remedy is to enjoin, enjoin or stay the prosecution, I think, is what Kleinman suggests anyway is is a correct answer. And I think that's what the one district court who did find that a defendant was in strict compliance with state law did agree to do. But to these, he may or may not have some right to bring some kind of a civil suit. Davies, I argued that case right here in this courtroom. And Davies left that question undecided. So we don't know. Davies just said you can't you couldn't bring a twenty two fifty five collateral. He waived it in Davies as well. About the same waiver clause that we've got going here. So I'm way over time. I this case is I just want to make the point. This case was heavily litigated in the district court for five years on a lot of issues. And and the defendants. So what would a little bit of extra delay to find out what the Ninth Circuit says on this issue? What what would that have been? You know, it's been five years. It's not it's not. I mean, I just can't see any reason to refuse to do that. I don't know the government's unwilling to take the risk that it will not just stick somebody else in prison who shouldn't be there. Mr. Schrader was the last or second to last of about 16 or 18 defendants to to plead out in this case once we got through all that other litigation that we did before. And at some point you have to be done with these cases at some point. You have to be done. You keep saying that, but I don't see why. Why? Why isn't it? We continue cases all the time for all sorts of reasons because, you know, I've got a case in the district court that's been out of my hands for several years because the patent office has got proceedings. I don't see where this something has to come to an end. I mean, it's not like he's saying, you know, I want more time. I want more time for no reason. He says, I want more time to hear what the Ninth Circuit has to say about whether or not the government are passing it. This is a specific goal. This is a specific time period for a specific purpose. And something that's pretty unusual, something that would tell the government you ought not to be prosecuted in the case. I don't see any legitimate reason to say no. And if you try to do this, we're going to we're going to threaten you with with upping the charges. Just seems like just sort of mean sort of unprincipled conduct to me. I've got two answers for that. The first is the answer that Judge Hurwitz gave, which he did have the ability to make that motion, decided not to do it. Why wasn't it an effect? Why wasn't it then an effective assistance of counsel? So let me I want you to ask. I want you to give your second answer to Judge Kaczynski. But so think about this. You say the government never conditioned the deal and him not making such a motion. He just waived the ability to do so. So if he'd made such a motion, what would where would he be today? He would have lost that motion and be in jail for the rest of his life. If he lost it. What if he won it? If he won it. So why the rest of his life? Because you have taken the deal away. Yeah, he admits that he's guilty of the crime. He admits to drug priors. He's going to go to jail for the rest of his life. Why? Because you would have taken the deal away. Because he extent we went through and if there was a full twenty to fifty five, all of this would come out. It's not in the record here. But we went we negotiated this over and over and over. He tried to retain the ability to raise this issue later. We told him, no, we wanted finality. We wanted to be done. And then he decided he signed the plea agreement. He waited for a month to plead because he wanted to wait for McIntosh. We waited six more months to sentence him. And then he finally got sentenced. And then McIntosh came out. I understand all that, but I'm not sure you've answered my question. I take it. I take it you're right. The government never said to him along the way, make all the motions you want. We're not going to condition our bargaining on you not making motions. I'll at least take that as a fact for the moment. His counsel never made a McIntosh motion. That's right. Even though Congress had passed a statute that said this. That's right. I understand why at the last minute you're unwilling to continue. Put that aside. Judge Kaczynski may be right that that's not appropriate. But that's what I'm asking, not what I'm asking. Now, we know his counsel could have filed a motion. The government didn't oppose him filing a motion. And he didn't. Why isn't that an effective assistance? Two reasons. First, this is a developing area of the law. Nobody knew which way McIntosh was going to come out. And frankly, nobody knew whether he could prove it's in down to the excerpts that his, this clinic that he, he may not have been in compliance. We couldn't have figured it out. There's all this risk sitting out there in a, in a very, very open area of the law that frankly, to this day is still fairly open. I don't understand what the risk was in filing the motion. If you're saying we didn't condition our plea agreement and I'm not filing a motion. We conditioned it on him, not upsetting the apple cart at the very end. If he files the motion and he loses, he's exactly where he was before. If he wins, he gets, if he wins, he gets a right to attack the marijuana charge. Right. And so, but the decision he had to make was take this, take the plea deal or file the motion. No, see, that's where, that's where you and I are missing each other. Right. I understand your position that in, at the very last minute, you weren't willing to continue further. Right or wrong. I understand that. But you said there was a time period to file motions and he could have filed any motion he wanted. Why, why wasn't it ineffective assistance not to file that motion timely when the deal wasn't conditioned on him not filing it? And now, and, and if he'd won, where would we be today? If he won, he would have the, the prosecution, at least of the marijuana charges, I think would be enjoined, but it's not. It wouldn't have been enjoined back then because we hadn't decided McIntosh yet. So this is my question. I'm, I'm, I'm, I'm taking a long time to get to it, but I want you to answer it. Okay. Let's assume he'd had a McIntosh hearing below and won it. And the judge had said, that's nice. You're in compliance with state law, but I don't, McIntosh hasn't come down yet in the ninth circuit. And I think it's hooey. So I'm not going to enjoin your prosecution. And he then took the plea deal. Where would we be? I, well, I, it's difficult to understand how, why, why there would be a hearing on a motion, he would have lost that motion as a matter of law is what would have happened because she doesn't think it matters whether he's, let's assume he brought it and the judge said, yeah, no, you are in compliance with state law. I'll, I'll, I find that as a matter of fact, but I don't think it does any good to you because I don't read the statute as enjoining prosecutions, which is the way most district courts read it before McIntosh, so I'm going to deny you relief and then the government said, okay, you've been, you've been denied relief, you want the plea deal or not? And he took it. Where would we be today? I think he would have waived his right to appeal that issue too. If this same plea deal had, if this same waiver had been included in whatever later plea agreement, he would have done so knowing that he had a, knowing that he had perhaps a winning card, but he didn't want to risk it against the possibility of, or maybe he would have decided not to do that. And he would have entered some kind of unconditional plea. And then he could have raised that issue on appeal. I did want to get to the second half of my answer to your question from about 10 minutes ago about this being mean, I would point you to the language of defense counsel below who explained, and this is in the excerpts at 15, who explained that the United States had been extremely courteous in, in granting multiple extensions to him before the plea went in and at sentencing in the excerpts at 44, his attorney said he didn't believe there was good cause to ask for a further delay. So Judge Kaczynski, this case was heavily litigated. The parties went and made their respective decisions after five years, six years of litigating this case. And there's nothing predictive about it. That's what the lawyer may have said, but I'm not sure why I should agree with it. I mean, I have nothing to say about politeness. I'm sure it was all courteous, but the fact, the fact is the government says we're not going to wait for the outcome of this case, a case, which is probably possibly going to say that we can't prosecute the defendant on these charges. Uh, I, I don't see what's a good faith about that or, uh, litigation risk in every case. And frankly, we don't know how long it's going to take this court. But let me, let me, let me get back to, uh, you know, you, I asked you a question earlier about what would have happened. And then, uh, you and Judge Rhodes went off in that direction, but you said he'd be in jail for the rest of his life. It sounded to me like what you said is that if he had asked for a evidentiary hearing, the government was not going to keep the offer open. That's, that's right. We were, we were done. We had, so, so, so, so, so the position of the government was if you want to get an evidentiary hearing, we are taking the deal off the table. Yeah. The, the plea agreement had been signed a month before and we had extended it and extended it and extended it. The, you, you can't keep this open forever. How long would an evidentiary hearing have taken? I mean, it's quite, let me tell you, the way you're describing it, it would have taken about five minutes. No, let me tell you how long an evidentiary hearing would have taken. They filed a motion to dismiss this prosecution early in the case on the grounds that there was no rational basis for marijuana to continue to be a Schedule I controlled substance. We litigated that issue for about three years. So I'm thinking an evidentiary hearing would have taken something in the range of one to three years to do. Well, isn't it a simple factual question? Was he in compliance with state law? It's a factual question, but it's not simple. It, this is a complicated, detailed area of law. California law is not some open-ended freewheeling, hey, marijuana is legal as long as you're handing it out and saying it makes you feel better. There, there's a, there are strict requirements under California law. You've got to be a closed system. You can't make a profit. All these, you've got to be in compliance with all these other rules and regulations. And I don't think he can show that, by the way. I know that's not our issue. I know we're taking you way over time, but let me ask one other question because I did some research on it and could, I was surprised at  It's okay to sell medical marijuana in California if you're a felon. I don't, I don't think there's any rule against being involved in a fear felony. Right. But you've got to do it in a closed system as part of a collective. You can't make a profit. There's all these rules. No, I still haven't gotten my answer to my question. I've been waiting. Which is? Uh, if he had brought this motion that you say he could have brought, uh, that would have taken the plea off the table. Is that right? It's pretty likely that that would have been the outcome. Uh, and that's not a question of timing. This is not because he would have brought it late. Even if he brought it early. No, no. If he would have brought it early, that'd have been fine. You mean after the plea offer was put on the table? After, well, after, if he had brought it in time, um, if he had brought it before the July 21st, uh, motion cutoff date that we had all stipulated to in that case. They, they get. When was the plea offer made? Uh, short, probably shortly after that. I, I don't know for sure. And it's certainly not in the record. I know he signed it a month before he pled. So he signed it sometime in, I believe, early November or late October. Um, and it was, and it had been negotiated over a long period of time because he did keep coming back and asking it, we're way outside the record, but he came back and kept asking us, Hey, can I, can I really reserve this marijuana issue? I'd like to reserve this marijuana issue. And we said, no, we want to be done. May I follow up? Um, just for clarification, the plea agreement that he signed was to an information that a superseding information, any way of superseding information, am I correct about that? Or just a superseding information? I believe it's just a superseding information. And was he a three time convicted felon, a career offender on the gun charge alone, or did he have to have the, did you all have to have the drug conviction for him to be a career offender? I don't know the answer to that question. I don't know the answer. The reason I'm asking it, and I know your way over time, and I apologize to the panel and I beg their indulgence. It seems to me that what I was taking away from reading the record was that there were hard fought negotiations on some very disputed issues, not only as to jurisdiction, but as to evidence as well. And that when this superseding information was finally signed, it was the consequence of long, hard negotiations and a decision that on both sides, this will be done at this point. That's right. And in fact, I think what you're referring to is the court took a break right at the beginning of the rule 11 colloquy, because it became apparent that Mr. Schwader wasn't comfortable with everything in the factual basis. So, so you can, you can see it in the excerpts. We literally crossed out facts that he didn't want to agree to. And we all, all the lawyers involved initialed it. So that this went on and on for months before he entered the, signed it. And then even after that, we made a few changes. So this was, but the fact remains, the government said, we're not going to continue this to hear, to find out what McIntosh is, we're just not going to do that two months before trial. And after five and a half years of litigating in the case, we said, yeah, we're not going to continue this anymore at that point. The answer is yes. That's correct. Okay. On the question of whether we have jurisdiction, are you familiar with our recent case of United States versus Brown came out November 21, opinion by judge Lippes on the first circuit. It's not, it's not an appeal waiver case, but it does discuss what is jurisdictional and what's not and to the slip opinion, five pages, five through six. They say, we may still consider jurisdictional claims. I use those challenging conviction independently of the question of factual guilt goes on for about a page in discussion. That's not particularly favorable to the government's position. You might want to take a look at it. We will. And thank you. Although I, from what you've just described, I, the, the factual guilt cases that talk about what's waived or not waived don't involve the men, a blackledge, those cases don't involve a plea agreement. They involve, I understand that, but they discuss what's jurisdictional and they say things that are jurisdictional fall outside of that. And it seems to me that something, if something is jurisdictional for those purposes, it's got to be jurisdictional for this purpose as well. Uh, there's not going to be two kinds of jurisdictional questions. Once when you enter a plea agreement and once when you, uh, uh, when you had just have a guilty, uh, um, plea. Well, I, I'm at a disadvantage, read the case. I'll, I'll read it. But I, a jurisdiction goes to the power of the court to hear something. And I don't see anything in that appeal waiver that could deprive the court of power to, to do anything. I think you said before you have plenty of power, so. Well, we've plowed to consider the case. The question is whether we have power, um, to, to, to rule on this issue, whether he's preserved this issue. Uh, um, anyway, you might, you might want to take a look at Brown. I will do that. Thank you, Judge Kuczynski. I think you're out of time. I will give you a couple of minutes for rebuttal. I'm aware I'm out of time. I actually had a question. Are you requesting a supplemental letter about United States versus Brown? Probably not. If we need any help, we'll let you. You are not familiar with Brown, right? No. I happen to read it on the plane up here. So, uh. I do have a question for you. Okay. With, I don't, I know we're way over time. Davey says you can't attack, you can't raise this kind of attack on collateral review. Right. Right. Yes. Yes. So what does it mean if we say you can raise it on direct appeal, which is where you are, then it was Davey's counsel ineffective for not raising it on direct appeal? Yes. And, and where would you assert that? I think the distinction that the court. Well, you'd have to assert it on collateral attack. That's true.  That's why I'm wondering. That's true. Whether we're in a circle here. It's true. We get in these circles. I think that Davey's hinged on the question of whether continued incarceration was a prosecution. And then that's how it was decided in the district court. And then because the case was final, which this case is not, the, the, this court found that the way. No, I understand that you, you're right. You're absolutely correct. My question is, was Davey's, if you're correct, wasn't Davey's counsel per se ineffective for not raising the issue on direct appeal? Yes, but it would, that puts him in a difficult position because it was before the waiver was enacted. In other words, Congress hadn't said you can no longer prosecute these cases. Then he came after he was convicted. Oh, I see your, your distinction of Davey's was that the, that the, the bill was passed after everything was final. That's correct. I got you. Okay. Thank you, your honor. Okay. Case is argued. We'll stand for a minute.
judges: Kozinski, Hurwitz, Keeley